## JONATHAN I. BOWDITCH *vs.* MARY A. BANUELOS & others.

This court has power, under its general equity jurisdiction to enforce and regulate the execution of trusts, to allow a trustee to resign upon his own application, notwithstanding the Rev. Sts. *c.* 69, and *St.* 1843, *c.* 19, conferring similar powers in certain cases upon the judge of probate.

An unmarried woman conveyed her real and personal estate to E. in trust to pay over the income thereof to her during her life, and on her decease to convey the property as she should appoint; and reserved the power, except while she should be a married woman, to revoke all the trusts created by this settlement, and dispose of the property at her pleasure; and the settlement provided that the said trustee might resign at pleasure, and that the settler might nominate a new trustee, and that " said E." should transfer all the trust property to such new trustee, who should " thenceforth have and exercise all the rights and powers, and be subject to all the duties, hereby vested in or imposed upon said E." *Held*, that the power of appointment, reserved to the settler, was not exhausted by one appointment of a trustee on E.'s resignation; but that on the resignation of such new trustee, she might make another appointment, and that, if such appointee was a fit person, the court would order the trust property to be conveyed to him.

PETITION by a trustee under two indentures, made by Mary Adeline Thorndike, and hereinafter set forth, to be discharged from his trust; and for such order and decree in regard to the appointment of a new trustee, and the conveyance and transfer of the trust property, as to the court might seem just and equitable; and to be discharged from all further responsibility.

The facts, on which the case was submitted to the court, as appearing from the petition, answers, and agreed statement, were these : On the 27th of March 1847, Mary Adeline Thorndike, then of full age and unmarried, and dwelling in Boston, and Ezra A. Bourne, her step-father, entered into an indenture, which recites that the said Mary Adeline is seized and possessed of certain real and personal estate, " and is desirous of settling said real and personal estate for her own separate benefit, so that the same shall be subject to her own separate control, and free from the debts, engagements or control of any future husband," and " witnesseth that said Mary Adeline, in consideration of the premises and of one dollar paid by said Ezra," conveys certain real and personal property to him, his heirs, executors, administrators and assigns, " but in trust, nevertheless, for the intents and purposes, and subject to the powers, provisions

and stipulations, hereinafter expressed," namely: First, to collect the rents, income and interest, and pay the same to said Mary Adeline on her own personal receipt, whether married or single, "so that said interest and income shall be receivable by said Mary Adeline during her natural life, each and every year, to her own separate use, and be in no wise liable for the debts, or subject to the control, of any future husband of said Mary Adeline." "Secondly, in trust at and upon the decease of said Mary Adeline to hold, manage, dispose of and transfer all and singular said real and personal estate, in such way and manner, to and among such parties, and upon such uses and trusts, as said Mary Adeline, whether married or single, may have directed by any last will or testament, or instrument in the nature thereof, executed before three witnesses, and in default of such appointment, to transfer and convey the same to the heirs at law of said Mary Adeline." "Thirdly, in trust at any time to change the investments of personal property at his the said Ezra's discretion, as he may deem advisable," "and, with the written assent of said Mary Adeline, to sell and convey said real estate, or any part thereof, to any person or persons, for such considerations as he may deem advisable," "and the proceeds of said sales of real or personal estate to invest in other real estate or personal estate, at his the said Ezra's discretion, with the same powers from time to time to sell and dispose of said after purchased real and personal estate, as hereinbefore granted in respect of the real and personal estate hereby assigned." "Fourthly, said trustee is to pay all charges and expenses, and deduct the same from the income of the property held in trust, with a reasonable charge for his services as such trustee; and said trustee is only to be responsible for his own wilful default, and not for any accidental error of judgment. Said trustee may resign the trust at pleasure, and said Mary Adeline may also at pleasure decide to select a new trustee, and in either case she shall nominate a new trustee in writing, and said Ezra shall, as soon as may be, transfer and convey all the trust property, then held by him, to such new trustee, who shall thenceforth have and exercise all the rights and powers, and be subject to all the duties, hereby

19 *

vested in or imposed upon said Ezra. And in case of the death of said Ezra, or his inability in any event to act as such trustee, a like nomination of a new trustee shall be made by said Mary Adeline, and suitable conveyance shall, as soon as may be, be made and executed by said Ezra, his heirs or representatives, (as the case may be,) to vest all and singular said trust property in such new trustee, who shall, thenceforth, have and exercise all the rights and powers, and be subject to all the duties afore-said." Fifthly, " said Mary Adeline shall and may, at any time or times hereafter, (except while she may be a married woman,) revoke any and all the trusts hereinbefore mentioned, and direct and appoint said real estate and personal property or any part thereof to be conveyed by said trustee for the time being, in any way or manner, to any person or persons, and upon any other trusts, which she may choose; and thenceforth all and singular the trusts hereinbefore mentioned shall wholly cease and deter-mine, so far as respects the property, real or personal, respecting which said Mary Adeline may have made such new direction or appointment; and said trustee shall forthwith convey, trans-fer and dispose of the same pursuant to such new direction or appointment." And the said Ezra declares his acceptance of said trusts, and covenants to perform the duties thereof. By another indenture between the same parties, dated March 27th 1849, the said trust was extended so as to convert into capital for the uses of the trust, certain unexpended income of the trust property, then in the hands of Bourne, or which might thereafter come into his hands.

On the 19th of June 1851, said Mary Adeline intermarried with the Chevalier Banuelos, a Spanish subject, legally domi-ciled at Madrid, but residing at Washington, as first secretary of legation in the Spanish embassy.

By an indenture, dated November 9th 1851, between said Mary Adeline, said Bourne, and the petitioner, Bourne resigned his office of trustee; the said Mary Adeline nominated and appointed the petitioner " to be trustee under said two inden-tures," " in the place and stead of said Bourne; " Bourne trans-ferred the property to the petitioner " in trust, for the intents

and purposes, and with all and singular the rights and powers, in and by said two indentures expressed and granted;" and " said Bowditch hereby declares his acceptance of the trust aforesaid," and covenants " that he will well and truly perform all and singular the trusts in said indenture set forth, and, according to his best judgment and discretion, exercise all and singular the powers thereby granted," and acknowledges the receipt of the trust property; and the said Mary Adeline and her husband join in discharging Bourne from his responsibility as trustee.

On the 15th of March 1852, said respondent requested the petitioner to convey and transfer the trust property to her said husband, to be held by him as her trustee, upon like trusts; which the petitioner declined to do. Said respondent then nominated Joachin Enriquez, second secretary of legation of the said embassy, and residing at Washington in that capacity, to be her trustee in place of the petitioner, and requested the petitioner to convey and transfer the trust property to him. The petitioner thereupon, on the 13th of April 1852, filed this petition. And said respondent afterwards filed an answer, objecting to the jurisdiction of the court, and claiming the right to appoint her own trustee.

Said respondent has two children, daughters, born since the filing of the petition, who have appeared and filed answers by their guardian *ad litem.* Said respondent has no father or brother living. She has three sisters, all married, and their husbands are residents and citizens of other states or countries. Her mother is the wife of said Ezra A. Bourne. And her husband, mother and sisters have had notice of the filing of the petition, but have made no answer thereto.

On the 1st of October 1851, said respondent made a will, devising and bequeathing the said trust property to her said husband. After the birth of her eldest daughter, and prior to the birth of the youngest, said respondent made a new will to the same effect, dated June 7th 1853.

Her husband, since the filing of the petition and of her original answer, has received a new diplomatic appointment from the

Queen of Spain to the Court of Rome, and has left the United States with his wife and daughters, for the purpose of residing at Rome, in the discharge of the duties of his said office. In contemplation of the removal to a foreign country, said respondent, by an amended answer, filed on the 7th of June 1853, revoked all prior nominations or appointments, and appointed Christopher G. Ripley, Esquire, a citizen of Boston, and a member of the bar of this court, to be her trustee in place of the petitioner.

The parties agree that " if the court be of opinion, on the foregoing facts, that they have jurisdiction of the petition for the purpose of appointing a new trustee, and that the same ought to be exercised without or against the consent of the *cestui que trust,* they shall make such appointment as they may see fit; and if the court have jurisdiction for any other purpose, they may make such order or decree as the nature of the case may in equity require; otherwise, the petition is to be dismissed, with or without costs against the petitioner, and with or without a decree charging the petitioner's disbursements in this case on the trust fund, as the court may order."

The arguments were had at November term 1853.

*S. Bartlett,* for the petitioner. 1. At the time of the filing of the petition, Mrs. Banuelos had attempted to make an improper appointment of a successor to the plaintiff, by appointing her husband, a foreigner, to be trustee under the indentures. Such an appointment would not be sanctioned by a court of equity, unless contemplated by marriage articles to which the foreigner was a party; and would have left the plaintiff responsible. *Guibert's Estate,* 13 Eng. Law & Eq. R. 372. *Meinertzhagen* v. *Davis,* 1 Colly. 335. Hill on Trustees, (Amer. ed.) 188. The plaintiff was therefore justified and required to resort to the general chancery jurisdiction which this court has in such matters. Rev. Sts. *c.* 81, § 8. *Wright* v. *Dame,* 22 Pick. 55. Hill on Trustees, 190, 195. And such jurisdiction will be exercised on the application of the trustee. *Coventry* v. *Coventry,* 1 Keen, 758. The power given to the judge of probate to appoint a new trustee, by Rev. Sts. *c.* 69, §§ 7, 8, and *St.* 1843, *c.* 19, refers

only to cases where a trustee has been allowed by the judge of probate to resign, under Rev. Sts. *c.* 69, § 5.

2. By the appointment of Bowditch, the whole power reserved to Mrs. Banuelos in the indenture was executed and exhausted. The words are : " Said trustee may resign the trust at pleasure, and said Mary Adeline may nominate a new trustee in writing, and *said Ezra* shall transfer and convey the trust property to such new trustee." Here is no power reserved to appoint *toties quoties ;* but the whole power is limited to supply a vacancy occasioned by the resignation of a party named. Such powers are to be construed strictly, and are not to be extended by implication. Hill on Trustees, 176, 177, 183. 1 Sugden on Powers, (6th ed.) 141. The indenture, by which the petitioner was appointed trustee, contains no reservation of any power of future appointment or of revocation. Where the power of appointment or of revocation applies to estates or uses, and such power is to be executed by deed, though, by the terms of the instrument, the donee may appoint and revoke from time to time, yet if the first appointment do not reserve anew the power of revocation and appointment, the power is gone. 1 Sugden on Powers, 470. *Evans* v. *Saunders,* 1 Drewry, 415. The power of resignation under the indenture being confined to Bourne, it is doubtful whether the petitioner could resign, but for *St.* 1843, *c.* 19. *Greenwood* v. *Wakeford,* 1 Beav. 581.

3. The expenses of the trustee, unless he has acted from obstinacy or caprice, should be borne by the trust fund. Hill on Trustees, 196.

*W. H. Gardiner,* for the respondent Mary A. Banuelos. 1. This court has no authority by statute to appoint a trustee on this petition, unless as an incident of general jurisdiction in equity, " for enforcing and regulating the execution of trusts," under Rev. Sts. *c.* 81, § 8. That section only applies to the manner in which, and not to the persons by whom, a trust is to be carried into effect. Section 12 of *c.* 69 of the revised statutes confers equity jurisdiction on this court in cases of testamentary trusts only. *St.* 1843, *c.* 19, extends the jurisdiction of judges of probate to trusts created by deed. *St.* 1845, *c.* 158, concerns

only the appointment by judges of probate of trustees under wills, when the testator has omitted to appoint. By *St.* 1845 *c.* 208, § 8, a trustee may be appointed by this court, on the petition of a married woman, to hold her separate property; and by *St.* 1852, *c.* 212, (passed since the filing of this petition,) a trustee may be removed and a new one appointed, on the application of the parties beneficially interested, other than the trustee. But there is no statute expressly authorizing this court to allow a trustee under a deed to resign, and to appoint another. The petitioner has an adequate remedy at law, by application to the probate court, and therefore this court has no jurisdiction. *Wilson* v. *Leishman*, 12 Met. 316.

2. The general jurisdiction over trusts does not authorize the appointment of trustees under a deed, unless by consent of parties, or from circumstances of necessity, to prevent the failure of the trust, or as an incident to some suit brought for its general administration. 2 Story on Eq. § 1287. Hill on Trustees (Amer. ed.) 190, 207. *Hildreth* v. *Eliot*, 8 Pick. 293. *In re Ryley*, 3 Hare, 619. *Millard* v. *Eyre*, 2 Ves. Jr. 94. *Ex parte Shick*, 5 Sim. 281. *In re Fauntleroy*, 10 Sim. 252. *In re Davies*, 3 Macn. & Gord. 278, and 7 Eng. Law & Eq. R. 8. *Thomas's Trust*, 2 Eng. Law & Eq. R. 111. *Webb* v. *Shaftesbury*, 7 Ves. 480. Lewin on Trusts, 435. 2 Chance on Powers, § 2563. *Cafe* v. *Bent*, 3 Hare, 245. *Wilson* v. *Leishman*, 12 Met. 316.

3. If the court has any jurisdiction for the relief of the petitioner, this does not draw after it the power of appointing a new trustee, against consent, where there is a valid power of appointment lawfully vested in some person capable and willing to execute the power properly and without delay. 2 Chance on Powers, § 3027. *Brown* v. *Higgs*, 8 Ves. 570. *In re Laffan*, 1 Connor & Lawson, 395. *In re Byrne*, 6 Irish Eq. Rep. 565. *Hodson's Settlement*, 9 Hare, 118. *Callis* v. *Ridout*, 7 Gill & Johns. 1. ——— v. *Robarts*, 1 Jac. & Walk. 251. *Finlay* v. *Howard*, 2 Dru. & War. 490. *In re Roche*, 2 Dru. & War. 287. *Kennedy* v. *Turnley*, 6 Irish Eq. Rep. 399. *Middleton* v. *Reay*, 7 Hare, 106.

4. By the tenor and the effect of the trust indentures, this

respondent, possessing the whole equitable interest, has also the sole and exclusive power of appointing her own trustee, as often as she pleases; both upon strict verbal construction, and *a fortiori*, on the principles of construction justly applicable to instruments of this nature. As to the construction, with reference to the nature of the interest under the settlement, see 2 Story on Eq. §§ 1390, 1393, 1394, & *notes;* Atherly on Marriage Settlements, 330; Hill on Trustees, 421, 422; 1 Chance on Powers, § 544; *Fitzgerald* v. *Fauconberge,* Fitzg. 214, 219, 221; *Driver* v. *Thompson,* 4 Taunt. 294; *Ex parte Shick,* 5 Sim. 281; *McWhorter* v. *Agnew,* 6 Paige, 111; *Jaques* v. *Meth. Episc. Church,* 17 Johns. 586, 591; *Ladd* v. *Ladd,* 8 How. 28–30; *Imlay* v. *Huntington,* 20 Conn. 165, 169, 173; *In re Craig,* 1 Barb. 33. As to the construction, with reference to the nature of the power, see 1 Chance on Powers, §§ 352, 356, 440; Atherly on Marriage Settlements, 336, 337; *Lindow* v. *Fleetwood,* 6 Sim. 152; *Sharp* v. *Sharp,* 2 B. & Ald. 405; *Morris* v. *Preston,* 7 Ves. 547; 2 Sugden on Powers, 530; Hill on Trustees, 178; *In re Roche,* 2 Dru. & War. 287; *Cafe* v. *Bent,* 5 Hare, 36; *Sands* v. *Nugee,* 8 Sim. 130; *Titley* v. *Wolstenholme,* 7 Beav. 425; *Meinertshagen* v. *Davis,* 1 Colly. 335. As to the construction of this power on technical grounds, see 1 Chance on Powers, §§ 1367, 1368, 1372; *Perrott* v. *Perrott,* 14 East, 438; *Picquet* v. *Swan,* 4 Mason, 452, 453; *Sheffield* v. *Von Donop,* 7 Hare, 47. The authorities cited for the petitioner refer chiefly to settling the uses of an estate, in which the interest of the settler is limited; not to the appointment of a trustee.

5. Granting jurisdiction of the petition for certain purposes, and a discretionary control over the appointment of trustees under a power, the case does not call for its exercise, since it appears that a *cestui qui trust,* possessing the power, claims to exercise, and has in fact exercised it, in good faith and in a reasonable manner, not injurious to any other party, person or interest entitled to the protection of the court. *Lee* v. *Brown,* 4 Ves. 362.

6. The costs and expenses of the petitioner ought not to be

borne by the respondents or the trust fund. *Howard* v. *Rhodes*, 1 Keen, 581. *Angier* v. *Stannard*, 3 Myl. & K. 572. *Hamilton* v *Fry*, 2 Molloy, 458, as stated in 3 Chit. Eq. Dig. 2916, pl. 19 *Fagg's Trust*, 19 L. J. (N. S.) Ch. 175, in 4 Chit. Eq. Dig. 3553, pl. 5.

7. The former appointments were valid. It is no objection that the first appointee was her husband. Atherly on Marriage Settlements, 330. Hill on Trustees, 415. *Wall* v. *Tomlinson*, 16 Ves. 413. *Kensington* v. *Dollond*, 2 Myl. & K. 184. Nor that both the former appointees were aliens out of the jurisdiction. Lewin on Trusts, 100. *St.* 1852, *c.* 29. *In re Elias*, 7 Eng. Law & Eq. R. 5. *Meinertshagen* v. *Davis*, 1 Colly. 335. *Ex parte Tunno*, Bailey Eq. R. 395.

Shaw, C. J. The respondents deny the jurisdiction of this court to entertain the suit, or to pass any order on the subject, and insist that, under the indenture in this case, Mrs. Banuelos, although a *feme covert*, has the sole and exclusive power of appointment of a trustee, over which a court of equity can have no control.

In the first place, without going at much length into a consideration of the elaborate argument, and the numerous authorities cited, in the present case, the court are of opinion that they have jurisdiction in equity.

The equity jurisdiction, by Rev. Sts. *c.* 81, § 8, in cases of trusts, is given in very large and general terms, of " all suits and proceedings (when the parties have not a plain, adequate and complete remedy at the common law) for enforcing and regulating the execution of trusts, whether the trusts relate to real or personal estate."

The appointment and removal of a trustee, the right of the trustee to resign, or of the *cestui que trust* to require a resignation and transfer, are questions, and often very important questions, amongst many others which might be suggested, arising sometimes upon the law and rules of equity, affecting the respective rights and powers of trustee and *cestui que trust*, and sometimes on the construction of particular instruments, creating and limiting their powers and duties; and these often give

rise to questions, and demand some judicial proceedings; if so, they must be proceedings for regulating trusts, and so they are brought directly within this equity jurisdiction; for, there can be no proceeding in the matter, and of course no remedy, at the common law.

And it is no answer to say, that in some of these cases a power is vested in the judge of probate; for instance, by Rev. Sts. c. 69, to appoint and remove trustees, where trusts are created by a will; and so to appoint, when no trustee is named in the will, by St. 1845, c. 158. The power of the judge of probate to appoint and remove in case of testamentary trustees, as given by Rev. Sts. c. 69, was afterwards extended to trusts created by deed, by St. 1843, c. 19. But supposing that, by a strict examination of these statutes, it should appear that the probate court would have jurisdiction to remove a trustee on the application of the *cestui que trust*, or to allow him to resign on his own, and to direct all necessary and suitable conveyances and discharges, it would, we think, confer a concurrent jurisdiction only, and not an exclusive one, on that court, and, of course, would not supersede the jurisdiction of this. When a jurisdiction has been given in general terms to a higher court, and afterwards jurisdiction is given in particular cases, embraced in the more general one before given, to another court, without express words of exclusion or limitation, it does not take away the jurisdiction already conferred.

Coming then to the main question in the case, the court consider it a question of construction upon the terms of the original instrument. At the time that instrument was executed, Mary Adeline Thorndike, the settler, was the sole owner of the property, with the entire *jus disponendi*, the unlimited power of disposal, without control, and was of age to act with full effect, and not only unmarried, but apparently without any particular marriage then in prospect.

With this general power and control over the property, she might make any disposition she thought fit, by way of trust or otherwise, not repugnant to the rules of law. By the terms of the conveyance and the trusts declared, she reserved, with one

exception, the entire control of the property, the power to revoke all the trusts, to declare new trusts, and direct any conveyance or transfer at her pleasure. But the one exception was a very significant one, namely, " except while she may be a married woman; " and in some measure this exception affords a key to unlock the real intent and purpose of the whole instrument, to secure to herself the entire beneficial interest in the property, during her lifetime, to her separate use, notwithstanding her coverture, and the disposal thereof after her decease, so that it should be in no wise liable for the debts, or subject to the control of any future husband.

But as the conveyance was made by Bourne to Bowditch, as the new trustee, nominated by said Mary Adeline, after her marriage, with the concurrence and approbation of her husband, it was within the exception, and, of course, is to be governed by the other trusts of the deed, and is not to be construed as coming under the unlimited power to revoke and declare new trusts, as expressed in the clause above cited, being the fifth of the enumerated trusts. Besides ; the instrument of conveyance to Bowditch purports on its face to convey the same property held by Bourne, and on the same trusts and with the same powers, and no others.

Some of the trusts, and also the supplementary indenture, relate solely to the care and management of the property, and are immaterial here. The others are, to pay over the income to her separate use, on her receipt, whether married or single; to dispose of the property itself, as she may, by her will, whether married or single, appoint, and in default of such appointment to her heirs. The trustee is to pay all charges and expenses, incident to the care and management of the trust property, to receive a compensation for his services, and be responsible for his own wilful default only.

Then comes the clause on which the question depends, " Said trustee may resign the trust at pleasure, and said Mary Adeline may also at pleasure decide to select a new trustee, and in either case she shall nominate a new trustee in writing, and said Ezra shall, as soon as may be, transfer and convey all the

trust property, then held by him, to such new trustee, who shall thenceforth have and exercise all the rights and powers, and be subject to all the duties, hereby vested in or imposed upon said Ezra." So in like manner she is to nominate a new trustee, in case of the death of said Ezra, or his inability in any event to act as such trustee. On this instrument, it is contended that the power of Mrs. Banuelos to nominate a new trustee in case the former trustee should exercise his right to resign, or at her pleasure, if she for any cause. prefers a new trustee, is limited to one appointment, after the trustee first named; that limiting the right and the duty to " said Ezra," made it personal in him ; and that when she had made the appointment of one trustee to succeed him, her power was exhausted. But we think this is not the true construction of the instrument. Looking at the relation in which the settler stood, the general purposes of the trust, with the particular clauses to be construed, it was intended to place and continue the property under the same trusts, and subject to the same modes of transfer, in the hands of the successive trustees, as of Bourne, the first named. When it is said in the clause quoted, that in case she shall at her pleasure nominate a new trustee, " said Ezra" shall transfer, it manifestly means " said Ezra" in his capacity of trustee, and is equivalent to the phrase, " the said trustee" shall transfer. Besides; the new trustee shall have all the rights and powers, and be subject to all the duties, vested in and imposed upon " said Ezra." One of these rights, vested in said Ezra, and by this clause vested in the new trustee, is to resign the trust at pleasure ; one of the duties is, (in case she shall at her pleasure decide to appoint a new trustee and nominate one in writing,) as soon as may be, to transfer and convey the trust property to the new trustee.

But when we say, that she had a power at her pleasure to appoint, we do not mean to say, that this was an arbitrary power, to appoint a person unfit or unsuitable to execute such a trust; as a minor, an idiot, a pauper, or person incapable of performing the duties. It must be a person of full age, sufficient mental and legal capacity, and in all respects capable

of performing the required duties.  In case of trust property consisting of real and personal estate, we are not prepared to say, whether an alien not naturalized, and not capable by law to hold real estate, would or would not be a suitable or legal appointment.  We think the power was not exhausted by the appointment of the first substitute to Bourne, but that the same power existed, on every resignation, to appoint a new trustee, pursuant to the original trusts; but that this power, by necessary implication, was limited to the appointment of a person legally capable of executing it.

Whether the nomination of her husband by Mrs. Banuelos would, on account of that conjugal relation, have been so incompatible with the scope and purpose of the whole instrument, as would constitute a valid objection to his appointment; or whether the fact, if it was so, that Mr. Enriquez was a foreigner, having no domicil in the United States, and was an alien not naturalized, would have been a valid objection to him; had she persisted in either of these nominations, and required the opinion of the court thereon, we have no occasion to decide, because both nominations have been revoked and withdrawn.  As the nomination of Mr. Ripley has since been made, to which there is no exception, there can be no hesitation, on the part of the court, in confirming that nomination, and directing that the petitioner make the necessary transfers and payments to Mr. Ripley as such trustee, and that thereupon the petitioner be exonerated and discharged from further responsibility.

In regard to the question of jurisdiction, which, in the events that have occurred pending the suit, seems to be the only one of any importance, we might have added, that the jurisdiction of the court, to entertain a suit respecting the regulation of these trusts, does not depend on the consideration whether Mrs. Banuelos had or had not the exclusive power to nominate a new trustee, or whether after coverture, this was to be done by herself, as her own separate act, or with the assent or concurrence of her husband.  If a question could be raised about it, the different parties might take opposing views of such question, it would then be a controversy involving great interests and im

portant rights of property. It seems hardly to admit of doubt, that the beneficiary, the *cestui que trust,* might by the terms of the statute have had a suit in equity to enforce its execution; and it seems to follow, as a necessary consequence that, upon similar questions in controversy, the trustee, when necessary, may invoke the aid of the same tribunal.

*Decree confirming the appointment of Mr. Ripley, directing the necessary transfers and acquittances, with costs for the petitioner, payable out of the fund.*